THE STATE BANK AT MORRIS *v.* ROBERT P. BELL and others.

On the bill filed by A. against B. and others on a mortgage, *the Master reported,* that there was due to the complainant on his mortgage, on the 1st August, 1842, $16,021 51, and that the further sum of $7,459 17 would be due to the complainant on his mortgage on the 16th October, 1842 ; and that there was due to B., one of the defendants, for *interest* on his mortgage, on the 23d April, 1842, $1,096 50, and that the further sum of $543 25 would become payable for *interest* on B.'s mortgage on the 23d October, 1842, and the like sum for *interest* every half year, until June 7, 1855, when the principal of B.'s mortgage would become due; and that a competent part of the premises could not be sold to pay what had become due to the complainant and B. ; and therefore a decree was made for the sale of the premises, in parts ; the proceeds of the first part to be applied to pay, first, the principal and interest due and to become due to the complainant on his mortgage, with his costs, and, if any should remain of these proceeds, then, secondly, the principal and interest due and to become due to B., with his costs ; and if the proceeds of the first part be insufficient to satisfy the complainant's mortgage, his costs, and the costs of B., then that another part be sold ; and if the proceeds of that should not be sufficient to pay the complainant and his costs and B.'s costs, then that another part be sold, &c. On the petition of C., who, after the filing of the bill, became part owner of the mortgage premises, stating that, since the issuing of the execution, he had paid a large part of the complainant's mortgage, and had paid to B. all the interest that was due and payable and $600 of the principal though not due and payable ; that the complainant has directed the Master to stay the sale under the execution ; but that B. insists to the Master that the sale must proceed ; and that the Master threatens to proceed, at the instance of B.

*Held,* that B. had no control of the execution. And the Master was ordered not to proceed without instructions from the complainant or the further order of the court.

On the 15th of August, 1842, a final decree was made in this cause, reciting the report of a Master that there was due, on the 1st of August, 1842, to the complainants, on their mortgage, $16,021 51, and that the further sum of $7,459 17 would become due and payable to the complainants, on their said mortgage, on the 16th of October, 1842 ; and that there was due to Robert P. Bell, one of the defendants, on the 23d of April, 1842, for interest on his mortgage, $1,096 50 ; and that the further sum of $548 25 would become payable, for interest, on his said mortgage, on the 23d of October, 1842, and the like sum, for interest, every half year, until the principal of his said

mortgage, $18,275, should become due, which would be on the 7th of June, 1855; subject however to the provisions therein mentioned touching the payment of certain rent to Mrs. Electa Jackson, wife of Jos. Jackson, and to the right of dower of Mrs. Rachel Canfield, wife of Israel Canfield, in case she survive her husband, as stated in the answer of said Bell; and that the same premises comprised in the mortgage of the complainants are also comprised in the mortgage to the said Bell, except four acres, (describing it,) on which is a large brick dwelling house, late the residence of said Bell; and that the mortgage of the complainant's is prior to the mortgage of Bell; and that a competent part of the premises mortgaged to the complainants could not, in the opinion of said Master, be sold to satisfy what has become due to the complainants and to Bell, without material injury to the remaining part thereof; and that the whole of the premises mortgaged to the complainants should be sold; and that, in order to protect the respective equitable rights of the several purchasers and owners in the bill and answers in this cause mentioned in the said mortgaged premises, the same should be sold in separate parcels and in the following order, that is to say, that part of the premises so mortgaged to the complainants conveyed by said Bell and his wife to Jacob O. Drake, and by said Drake conveyed to the Stanhope Iron Company, excepting therefrom the following lots, the first excepted lot being the same that was conveyed by said Iron Company to Caleb Ayers, by deed dated February 8, 1841, (describing it;) the 2d excepted lot being the same that was conveyed by said Iron Co. to Pierson & Williams, by deed dated May 1, 1841, (describing it;) and the 3d excepted lot being the same that was conveyed by said Iron Company to Abm. L. Clark, by deed dated June 21, 1841, (describing it;) to pay and satisfy, in the first place, the principal and interest due and to become due to the complainants on their said mortgage, with their costs; and, if any should remain, in the 2d place, the principal and interest due and to become due to the said Bell on his mortgage, with his costs; and, if any should remain, in the 3d place, the costs of said Pierson & Williams; and, in the 4th place, the costs of the said Clark.

And in case the said premises so mortgaged to the complain-

ants, excepting thereout the brick house and lot above mentioned and the three last excepted lots, should not sell for enough to satisfy the principal and interest due and to become due to the complainants on their mortgage, with the costs of the complainants and of said Bell, then to sell the 3d excepted lot, being the said lot conveyed by said Iron Company to said Clark ; and if the proceeds of this lot, in addition to the proceeds of the first sale, should not be sufficient to pay the principal and interest due and to become due to the complainants on their said mortgage, with their costs and Bell's costs, then to sell the 2d above excepted lot ; and if the proceeds should still be insufficient to pay the principal and interest due and to become due the complainants, with their costs and Bell's costs; then to sell the first above excepted lot ; and if the premises mortgaged to the complainant, excepting thereout the brick house and lot, should not sell for enough to pay the principal and interest due and to become due to the complainants, with their costs, then to sell said brick house and lot above described and which was excepted out of the conveyance by said Bell and wife to said Drake.

And thereupon decreeing that the said report be confirmed ; and that the premises mortgaged to the complainants, or so much thereof as should be sufficient, be sold in the order aforesaid ; and that a *fi. fa.* issue, directed to Wm. N. Wood, one of the Masters in Chancery, to make sale, in the order aforesaid, for the purposes aforesaid.

On the 11th of August, 1848, Edwin Post presented a petition, stating the mortgage given by Bell and his wife to the State Bank at Morris, and the mortgage given by Jacob O. Drake to the said Bell, being the mortgage mentioned in the pleadings and decree in the said cause ; and that he, Post, has become a part owner of the said mortgaged premises ; stating the proceedings on the foreclosure bill filed by the said Bank, the report of the Master and the decree thereon ; stating that, since the said decree and the issuing of the execution thereon, he has paid large sums of money thereon to the said complainants ; and has paid to Bell, on his said mortgage, all the interest that was due thereon at the time of the said decree, and all that has since become due thereon ; and that nothing will be due to Bell for principal

until June 7, 1855 ; and that he has, since said decree, paid Bell $600 on account of the principal of his mortgage, though no part of it was due ; that about $17,217 43 of principal, besides interest from April 1, 1848, remains due to the said complainants on the said decree, and $17,340 62 of the principal of Bell's mortgage remains unpaid ; that the execution upon the said decree was issued to Wm. N. Wood, one of the Masters, to be executed as therein directed ; and that the Master proceeded in the execution thereof until stayed by the order and direction of the said complainants, and has been so stayed by the said complainants ever since; That since the said decree he, Post, with the persons with whom he has been associated, have expended in permanent improvements upon the mortgaged premises more than $100,000, and that the mortgaged premises are now worth more than double what they were worth at the time of the execution of the said mortgage to Bell.

That the complainants are now satisfied to stay further proceedings on the said execution for the present, and to give the petitioner further time to pay the balance due thereon, and are willing and desirous that the said execution be stayed ; and have so declared and represented to the said Master ; but that said Bell declares that he has an interest in the said decree which gives him the right to insist upon the execution thereof against the wish and desire of the complainants therein, notwithstanding there is nothing now due to him on his said mortgage mentioned in the said decree ; and that Bell insists to the said Master, and has directed the said Master to proceed forthwith in the execution of the said writ of *fieri facias*. That the said Master declares that he is unwilling to take any personal responsibility in the premises, and that it is the duty of the petitioner, if he desires a further stay of said writ of execution, to get the order and direction of the court therein ; and that he will proceed forthwith to advertise and sell the said mortgaged premises, at the instance and on the request of Bell, unless he has the direction of this court to the contrary ; and that said Master has declared that he is about to advertise the sale of said mortgaged premises, having been directed so do so by said Bell ; and that public notice at this time of a sale of said mortgaged premises would particular-

ly injure the petitioner in his business, and greatly embarrass him in the prosecution thereof; and that the mortgaged premises are not liable to waste or destruction so as to endanger the security of said Bell; and that the petitioner is now engaged in making large and valuable improvements thereon by means of which the value of the premises will be greatly increased; and that Bell can have no pretense for insisting on the immediate execution of the said decree other than to obtain the payment of his said mortgage money long before it is due and payable; and praying the order of the court that the said Master desist from advertising the premises for sale until directed by the complainants or by the further order of the court; and praying the order of the court upon the said complainants and the said Bell to show cause, at such time and place &c., why the said execution should not be stayed until the order of the said complainants or of this court to the contrary; and that the Master, in the mean time, be directed to desist from proceeding on the said execution.

On this petition an order to show cause was made pursuant to the prayer thereof, and that a copy of the order to show cause be served, within six days, on the said complainants and the said Bell, or their respective solicitors, and on the said Master.

On the hearing of the motion, depositions were read establishing the material facts stated in the petition.

*Leport* and *A. Whitehead* in support of the motion.

*J. J. Scofield* and *P. D. Vroom*, contra.

THE CHANCELLOR. The decree is not a decree for sale to satisfy Bell's mortgage. It is a decree for sale to satisfy the mortgage of the Bank, the complainants in the cause; and merely provides that if, on the sale of so much of the property as shall be sold for the purpose of paying the Bank mortgage, a surplus shall arise after paying the Bank mortgage, it shall be applied on the Bell mortgage. Since the decree, the interest due Bell has been paid, and there is nothing now due Bell for

either principal or interest; and his principal does not become due till 1855.

He has no control of the execution, and no right to direct the master to proceed to sell. It is not the duty of the Master to sell if the complainants in the cause do not desire it.

The fact that after Bell gave the Bank mortgage, he sold to a third person a part of the premises mortgaged to the Bank, and took a mortgage on the part so sold, does not give him any control over the decree and execution; nor does the fact that the part Bell retained is incumbered only by the Bank mortgage give him the control of the decree and execution, however convenient and desirable it may be for him that the part he retains should be relieved from the Bank mortgage. His money is not due; and there is no decree for sale to raise his money.

An order will be made, by way of instructions to the Master, pursuant to the prayer of the petition.

Order accordingly.